UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

SUSAN AYCOCK FLENIKEN, ET AL     CIVIL ACTION NO. 11-CV-1270

VERSUS     JUDGE HAIK

HOTEL OPERATING L.L.C.     MAGISTRATE JUDGE HANNA

*REPORT AND RECOMMENDATION*

Before the undersigned, on referral from the district judge for report and recommendation, is a Motion to Strike Amended Complaint filed by Defendant 904 Hotel Operating, LLC d/b/a MCM Elegante Hotel (hereinafter MCM) [Rec. Doc. 10]. The motion is opposed by Plaintiff. [ Rec. Doc. 12]   In addition, following the removal of this case from state district court,  the undersigned  raised, *sua sponte*, the issue of subject matter jurisdiction related to the diversity of citizenship issue and ordered briefing. [Rec. Doc. 13]  Oral argument on the motion and all jurisdictional issues was held on February 29, 2012. [Rec. Doc. 80]  After considering the record, the memoranda of the parties and the arguments of counsel, it is the finding of this Court that at the time of removal, the parties were diverse in citizenship. Further, it is recommended that the Motion to Strike be granted in part and that the claims against the non-diverse defendants sought to be added in the Amended Complaint be stricken.

**Pertinent Factual and Procedural History:**

The incident forming the basis for this litigation arises from the tragic death of Gregory Joseph Fleniken, whose body was found in his hotel room at the Elegante Hotel in Beaumont, Texas on September 16,  2010. Mr. Fleniken was married to Susan Aycock Fleniken.  For several years before his death, he worked in Beaumont, Texas during the week, returning to Lafayette, Louisiana on weekends, where he lived with his wife in a home which also was operated as a bed and breakfast. The original Petition for Damages asserting claims for damages, wrongful death and a survival action, was filed  in the 15th Judicial District Court for the Parish of Lafayette, Louisiana on March 18, 2011. [Rec. Doc. 1-1]    The plaintiffs were identified as Susan Aycock Fleniken, individually and on behalf of her deceased husband Gregory Joseph Fleniken, and Gregory Joseph Fleniken, named separately but whose interests were represented by his widow, Susan Fleniken. Mr. Fleniken was identified as a Texas domiciliary at the time of his death.[1]  The defendant, 904 Hotel Operating, LLC., (MCM) was described as a Texas limited liability company. [Rec. Doc 1-1, p. 3]  The petition alleged negligence by MCM in failing in its duty to its patrons to maintain a reasonably safe and secure environment. All claims were based

---

[1]Since Mr. Fleniken is named as a plaintiff but is represented by his widow who has her own claims, there is only one party who will be referred to as the plaintiff.

on Louisiana tort law.

On July 6, 2011, MCM filed a Notice of Removal, asserting jurisdiction based on diversity of citizenship under 28 U.S.C. §1332.  Specifically,  MCM asserted that the proper parties to the action are completely diverse since Susan Fleniken is a domiciliary of Louisiana and MCM is a limited liability company domiciled in Texas[2].  MCM further asserted that the decedent, Gregory Fleniken, was improperly named as a party plaintiff and that his domiciliary status should be disregarded for the diversity analysis since a deceased person lacks the capacity to bring suit under Louisiana law.[3]  [Rec. Doc. 1, p. 2]  MCM answered the suit on July 21, 2011. [Rec. Doc. 4]

On July 29, 2011, without leave of court, the plaintiff filed a First-Amending and Restated Complaint for Damages. [Rec. Doc. 7]  The amended pleading added multiple additional defendants, including Newtron, Inc., Newtron Group, LLC, ABC Insurance Company, Lance Mueller, Timothy Steinmetz, Trent Pasano, and Aaron

---

[2]The defendant's domiciliary status in Texas is confirmed in the Corporate Disclosure submission in the record. [Rec. Doc. 5]  MCM also asserted that the amount in controversy exceeds the sum of $75,000.00, [Rec. Doc. 1, p. 2, para. 3] which is not in dispute.

[3] While this is may be a correct statement of the law, since 28 U.S.C. §1332(c)(2) mandates that the legal representative of the decedent shall be deemed to be a citizen ONLY of the same State as the decedent, the domiciliary status of the decedent cannot be disregarded as Susan Fleniken brought her claims individually and on behalf of her deceased husband as his surviving spouse and beneficiary under La.Civ.C.Arts. 2315.1 and 2315.2.

Bourque.   The two Newtron companies are alleged to be Louisiana-based; the individual defendants are nonresidents alleged to be employed by Newtron who were working in Port Arthur, Texas at the time of the incident.  Two of the men, Meuller and Steinmetz, allegedly occupied the room adjacent to Mr. Fleniken at the Elegante Hotel at the time of the incident.  Pasano appears to have been visiting them although that is not clear. Plaintiff alleges the men behaved disruptively at the hotel, that Pasano retrieved a gun belonging to Mueller from a vehicle and brought it to the room, and while Mueller was handling it, the gun discharged from their room, piercing the wall separating their room from Fleniken's, striking him and causing his fatal injuries. [Rec. Doc. 7] The amended pleading further alleges that, when questioned by police,   the   men falsely denied any knowledge relating to the circumstances surrounding Fleniken's death, even though they had patched the bullet hole in their room. This false information impeded the investigation causing unnecessary mental anguish to Mrs. Fleniken.   Some days later Meuller divulged to his foreman, Aaron Bourque, allegedly a domiciliary of Texas, that the men were in their room when the gun went off firing into the adjoining room and he, Mueller, had witnessed the police taking the body out. Mueller further admitted that he lied to the police, yet Bourque took no action in response until approximately nine months later.

Expanded claims for damages were made including charges of wrongful death and the survival action of Mr. Fleniken against Newtron and its alleged employees, Mueller, Pasano and Steinmetz. The plaintiff also alleged a claim of negligent hiring and retention against Newtron for its failure to conduct a pre-employment background check on Mueller which would have revealed a prior criminal history involving alcohol related offenses and aggressive behavior. Although not specifically alleged, it is inferred that had such a check been performed, Mueller would not have been hired and Mr. Fleniken would not have been killed. According to plaintiff, the decision to hire Mueller was not only negligent, but willful, wanton and reckless thus entitling plaintiff to punitve damages.  [Rec. Doc. 7]

Finally, the plaintiff alleged a "negligent supervision, conspiracy, fraud and *respondeat superior*" claim against Newtron and all of its alleged employees, including Bourque, based on the knowledge of the incident by the alleged employees and their conspiring to misrepresent and/or supress the truth about the incident from the authorities for several months. During that time, Mrs. Fleniken was caused to suffer continued and unnecessary emotional distress.   Plaintiff alleges this conspiracy/fraud occurred in the course and scope of their employment by Newtron making Newtron liable under the doctrine of *respondeat superior* for all damages, including exemplary damages. [Rec. Doc. 7]

-5-

On August 12, 2011, MCM filed a Motion to Strike Plaintiffs' First-Amending and Restated Complaint for Damages. [Rec. Doc. 10] MCM urges that the amended pleading should not have been filed without leave of court since the addition of the Newtron defendants would destroy diversity jurisdiction. Invoking provisions of 28 USC §1447(e)  that, "if after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court", MCM seeks to have the joinder denied.[4]

On September 1, 2011, the plaintiff filed an opposition to the Motion to Strike, asserting that the claims against the Newtron defendants are valid and could not have been known to the plaintiff at the time of filing of the original petition.  The plaintiff denied attempting to defeat diversity jurisdiction by the filing and further argued that pursuit of two separate suits would cause injury. [Rec. Doc. 12]  Also on September 1, as part of the Court's routine jurisdictional review of removed cases, the undersigned issued a Jurisdictional Briefing Order calling for memoranda from the parties addressing the diversity issues, especially regarding the domicile of the

---

[4]The record suggests that the First Amending and Restated Complaint for Damages was the subject of a deficiency notice indicating that leave of court was required for the filing of the amended pleading per FRCP 15(a)(1).  For reasons not clear from the record, the deficient status was removed and the Amended Complaint was filed into the record without leave of court. [Rec. Doc. 8]

deceased. [Rec. Doc. 13] The parties submitted multiple briefs in September and October of 2011.  [Rec. Doc. 15, 20, 25 and 31]

On September 30, however, after the initial briefs were filed by the parties on the jurisdictional issue, but before the briefing was completed, the plaintiff  filed a Motion to Remand alleging lack of subject matter jurisdiction because the decedent was domiciled in Texas, and therefore, Mrs. Fleniken would assume his domicile by operation of law and the parties would not be diverse.[5] [Rec. Doc. 21] Further, in the event it was determined that the decedent was domiciled in Louisiana,  the claims against the Newtron defendants are viable claims against the alleged employer, a Louisiana corporation, who was not diverse from Mrs. Fleniken. Under either scenario, diversity jurisdiction did not exist. [Id.] This motion is pending before the district court.

Also pending before the district court is a motion to dismiss the claims against one of the alleged occupants of the room adjoining the decedent's room, Lance Mueller, for lack of personal jurisdiction, [Rec. Doc. 42] and a motion to dismiss the claims against the Newtron defendants under Fed. R. Civ. P. 12(b)(6), or alternatively, a motion for summary judgment pursuant to Fed. R. Civ. P. 56. [Rec. Doc. 51] The district court pretermitted ruling on these motions pending resolution

---

[5]28 U.S.C. §1332(c)(2).

of the jurisdictional issues and the motion to strike by the undersigned. [Rec. Doc. 58]

On February 12, 2012, the Newtron defendants filed a memorandum in support of the Motion to Strike Amended Complaint and in Opposition to the Motion to Remand arguing that the Amended Complaint should not be allowed under *Hensgens v. Deere & Co.* 833 F.2d 1179 (5th Cir. 1987) because the claims against the Newtron defendants would be futile. [Rec. Doc. 73] The Newtron defendants attached exhibits to this motion including an affidavit from the Health, Safety and Environmental Manager for Newtron who attested that none of the occupants of the room adjoining that of Mr. Fleniken were even employed by any Newtron entity at the time of the incident. [Rec. Doc. 73-1] On February 13, MCM adopted Newtron's "reasons of fact and law" filed in support of Newtron's motion to dismiss, or alternatively, motion for summary judgment.[6] [Rec. Doc. 72] In this brief, MCM asserted it was not aware of Newtron's alleged status as a "non-employer" until several months after MCM had filed its motion to strike.

Plaintiff filed a memorandum opposing the position of Newtron (and, by implication, the   adoption of Newtron's motion by MCM) on February 28, 2012 asserting that 28 U.S.C. 1447(e) was not implicated and leave of court was not

---

[6]The exhibits to that motion, though not specifically adopted by MCM, are identical to those filed in Newtron's memorandum in support of MCM's motion to strike.

required to amend the Complaint because the plaintiff was not attempting to add non-diverse parties relying on the initial allegation that Mr. Fleniken was a citizen of Texas based on his alleged domicile there.[7] [Rec. Doc. 77] The plaintiff also objected to the introduction of extraneous facts used in support of the Newtron motion to dismiss as part of the court's *Hensgens* analysis. [Id.] The plaintiff contends the factual allegations in the Amended Complaint, accepted as true, allege a viable claim against Newtron as the employer, which is a Louisiana corporation, who is not diverse from Mrs. Fleniken, and this Court should look no further and allow the case to proceed.

### Issues presented for review

As a threshold matter, the Court must determine the domicile of the decedent at the time of his death in order to determine if subject matter jurisdiction existed at the time of removal. If he was a domiciliary of Texas, his widow would be deemed a citizen of Texas, subject matter jurisdiction under 28 U.S.C. §1332 would not exist at the time of removal and the case would be remanded without the necessity of

---

[7]The Court is somewhat perplexed by this position inasmuch as the amendment also seeks to add Mr. Bourque, alleged to be a domiciliary of Texas, as well as the "Louisiana" Newtron defendants. [Rec. Doc. 7, p. 2] As a result, notwithstanding the Texas citizenship of MCM, diversity would be destroyed even if Mr. Fleniken was found to be a domiciliary of Texas and there is no doubt the plaintiff was attempting to add non-diverse defendants.

further analysis. If the decedent was a domiciliary of Louisiana, his widow would be deemed a citizen of Louisiana and diversity jurisdiction would exist at the time of removal. At that point, the Court would determine which procedural vehicle should be utilized to determine whether the amendment should be allowed. If it is allowed in full, there will be Louisiana citizens on both sides of this controversy, subject matter jurisdiction will not exist and the case will be remanded pursuant to 28 U.S.C. 1447(e). If it is not allowed, or allowed only in part, the motions pending before the district court may, or may not, become moot.[8] Therefore, not only will determination of the threshold issue implicate the issues raised in the motion to strike, the resolution of both will implicate the motion to remand, as well as the Newtron defendants' motion to dismiss, or alternatively, motion for summary judgment, and possibly Mr. Mueller's motion to dismiss  pending before the district court.

### 1. The Domicile of Gregory Fleniken.

Contrary to the representations by the defendant in the removal action, the

---

[8]The Newtron defendants' motions will be moot under any scenario. If Mr. Fleniken is found to be a domiciliary of Texas, the parties were not diverse at the time of removal, there is no subject matter jurisdiction and the case must be remanded. If he is found to be a Louisiana domiciliary and the amendment is granted, the case must be remanded under §1447(e). If the amendment is not allowed, Newtron is no longer a party to these proceedings. Therefore, the Court will decline the invitation to utilize the exhibits attached to the Newtron motions.  If the amendment is allowed in part, Mr. Mueller's motion will remain pending for resolution by the district court.

citizenship of Gregory Fleniken cannot be disregarded, since the determination of his domicile at the time of his death presents a threshold question in the jurisdictional analysis.  Under the provisions of 28 U.S.C. §1332(c)(2), the  legal representative of the estate of a decedent "shall be deemed to be a citizen only of the same State as the decedent."  In support of their respective positions and per the undersigned's earlier briefing order, the parties have submitted "summary judgment type" evidence for the Court's review.  Included in those submissions are documents which establish that:

> a. Susan Fleniken resides at 616 General Mouton Avenue in Lafayette, Louisiana, an address where Greg Fleniken was shown by mortgage and tax records to own a bed and breakfast and where he took a Louisiana homestead exemption . [Rec. Doc. 15-1, Ex. 2]

> b. Greg Fleniken's obituary notes that "[W]hile he worked weekdays away from his home, he took great pleasure in returning home on the weekends.  It was at home that Greg joined his wife and welcomed guests from all around the world to their Bed & Breakfast Inn." [Rec. Doc. 15-1, Ex. 1] The General Mouton Avenue address is also noted on the Autopsy Report. [Rec. Doc. 15-1, Ex. 4]

> c. Records of the Louisiana Secretary of State indicate that Greg is listed as the registered agent for Gulf Coast Permitting, Inc. In those records, his address is listed as 616 General Mouton. [Rec. Doc. 15-1, Ex. 3]

> d. Since approximately 1997, Greg Fleniken worked in Beaumont, Texas as Vice President of OGM Land Company. He held a Texas driver's license and showed his address as 4840 Ward Drive, Beaumont, Texas. [Rec. Doc. 20, Ex. 1-B] He banked at a Texas bank, and he had been registered to vote in Jefferson County, Texas since 2006 utilizing

the same address for both purposes. [Rec. Doc. 20, Ex. 1-C, 1-D] His vehicle was registered in Texas at the same address and he used the same Texas address on his federal income tax returns. [Rec. Doc. 20, Ex. 1, Para. 9, 10] Finally, he used the same Texas address in his Secretary of State application for Catching Dreams, LLC. [Rec. Doc. 20, Ex. 1-A]

e.  Notwithstanding the listing of his address on all these documents, according to the Planning Division of the City of Beaumont, the entirety of Ward street is zoned as a Light Industrial district, and residential uses are not permitted at the address. [Rec. Doc. 25, Ex. 1, 5]   Further, the address designated as the "Beaumont office" for OGM Land Company on its website is 4840 Ward Drive. [Rec. Doc. 23, Ex. 6]

In the original petition and in brief, the plaintiff states:

(a).   Greg married Susie in 1998 and they do not have any children. The couple owns a house in Lafayette, Louisiana which also operates as the Country French Bed and Breakfast.  At the time of his untimely death, Greg was working full-time in Beaumont since approximately 1997. Accordingly, Greg split his time between a hotel in Beaumont and the house/bed and breakfast that he owned with Susie in Lafayette. During the last few years, he traveled to Beaumont on Mondays and returned to Lafayette on Thursdays. When he was working in Beaumont, he "regularly stayed' at the Elegante Hotel.[Rec. Doc. 1-1, p. 2-3 and Doc. 20, p. 1]

(b)   On the evening of September 15, 2010, Greg Fleniken was lying on his bed in Room No. 348 of the Elegante in Beaumont, Texas. He was in town for business and spoke to his wife that evening.  Greg told his wife, Susie, that he was about to watch a movie and go to sleep. The next morning, Susie was unable to reach Greg on his mobile phone and he did not show up for work. At her request, a few individuals from his office went to the hotel and found Greg dead on the floor in his room.   His body was returned to Lafayette. "Greg was a well-liked businessman from Lafayette, Louisiana . . ."[Rec. Doc. 1-1 p. 3-4, and Doc. 12, p. 4].

The determination of domicile for purposes of diversity jurisdiction is a matter

of federal common law.  *Acridge v. Evangelical Lutheran Good Samaritan Society,*

334 F.3d 444, 448 (5ᵗʰ Cir. 2003).  The Fifth Circuit recently reiterated that residency and intent to remain are the factors necessary to establish domicile, and therefore, citizenship:

> "In determining diversity jurisdiction, the state where someone establishes his domicile serves a dual function as his state of citizenship. A person's state of domicile presumptively continues unless rebutted with sufficient evidence of change. Domicile requires the demonstration of two factors: residence and the intention to remain."
>
> Evidence of a person's place of residence, however, is prima facie proof of his domicile. Furthermore, once established, "[a] person's state of domicile presumptively continues unless rebutted with sufficient evidence of change."

*Hollinger v. Home State Mutual Insurance Co.,* 654 F.3d 564, 571 (5ᵗʰ Cir. 2011) (quoting *Preston v. Tenet Healthsystem Memorial Medical Center, Inc.* (" *Preston I* "), 485 F.3d 793, 798 (5ᵗʰ Cir. 2007).

In *Preston v. Tenet Healthsystem Memorial Medical Center*  (*"Preston II"*), 485 F.3d 804, 814 (5ᵗʰ Cir. 2007) the court set forth the burden to show a change of domicile:

> In the context of diversity jurisdiction, once a person establishes his domicile in a particular state, he simultaneously establishes his citizenship in the same state. *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir.1954). Someone acquires a "domicile of origin" at birth, and this domicile presumptively continues unless rebutted with sufficient evidence of change. *Acridge*, 334 F.3d at 448 (citing *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir.2000)).
>
> [I]t is elementary that, to effect a change of one's legal domicile,

-13-

two things are indispensable: First, residence in the new locality; and second, the intention to remain there. The change cannot be made, except facto et animo. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be animus to change the prior domicile for another. Until the new one is acquired, the old one remains.... When challenged as here, the burden rested on him [the plaintiff] to show by a preponderance of the evidence that he was a citizen of that State.

*Welsh*, 186 F.2d at 17 (internal citations omitted); *see also Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638-39 (5th Cir.2003). Absent specific language in the statute specifying a different evidentiary standard, we employ the time-honored standard routinely applied to the fundamental question of citizenship: proof by a preponderance of the evidence.

In *Coury v. Prot*, 85 F. 3d 244, 251 (5th Cir. 1996), the court identified a number of factors to consider:

In determining a litigant's domicile, the court must address a variety of factors. No single factor is determinative. The court should look to all evidence shedding light on the litigant's intention to establish domicile. The factors may include the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family. [9]

The plaintiff states Mr. Fleniken was "from Louisiana," and that he began working in Beaumont in approximately 1997. Therefore, the Court finds that Mr. Fleniken's domicile of origin is Louisiana, and he is presumed to have maintained

---

[9]See also *Acridge*, 344 F.3d at 448.

that domicile unless the plaintiff can show, by a preponderance of evidence, that he changed his residence to Texas and intended to remain in Texas.  While the address listed on his driver's license, voter registration, tax returns, bank account and vehicle registration is in Texas, the Court finds that the Texas address provided is not, in fact, a residential address but a business address, and it is without dispute that Mr. Fleniken conducted at least some of his business in Texas. However,  Mr. Fleniken spent his evenings in hotels and  returned "home" on weekends to be with his wife. He claimed a homestead exemption on the house he owned in Louisiana. Pursuant to La. Const. Art. 7 §20:1, such an exemption applies to  the "primary residence . . . which serves as a bona fide home and which is owned and occupied by any person or persons owning the property in indivision . . ."  Mr. Fleniken owned real property in  Louisiana, and therefore, paid property taxes on the property he owned in Louisiana, and when he finished with his work in Texas, he returned "home" to be with his family in Louisiana.

While the Court will not speculate as to all the reasons for the Texas connections, they can be rationally explained by the common and often used rationale of more favorable tax treatment in light of his ongoing business relationship with Texas.   However, the plaintiff has not met  her burden to show either that Mr. Fleniken ever intended to change his domicile or that he, in fact, changed his

residence. The Court finds that Mr. Fleniken was domiciled in Louisiana at the time of his death. As a consequence, by operation of 28 U.S.C. §1332(c)(2), Mrs. Fleniken assumes his citizenship  and diversity jurisdiction existed at the time of removal.

## 2. The Amended Complaint without Leave of Court and the Motion to Strike.

On July 29, 2011, without leave of court, the plaintiff filed a First-Amending and Restated Complaint for Damages, maintaining the identifications of the named plaintiffs as set out in the original pleading. [Rec. Doc. 7] Sought to be added as defendants are Newtron, Inc., a Louisiana corporation with its principal place of business in Baton Rouge, Louisiana and Newtron Group, LLC, a Louisiana limited liability company with its principal place of business in Baton Rouge, along with other individual defendants.

Fed. R. Civ. P. Rule 15(a) provides:

(1) A party may amend its pleading once as a matter of course within: (A)  21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

The plaintiff filed suit in the 15th Judicial District on March 18, 2011. The

defendant was served on or about June 13. The suit was removed to this Court on July 6.  MCM filed its answer on July 21 and the amendment was filed on July 29. Therefore, while it may appear that the amendment could have been filed without leave of court since it was filed less than twenty one days after service of the responsive pleading by the defendant, the Rule 15 allowance does not stand alone when the plaintiff seeks to add non-diverse parties as multiple courts have held.[10]

Pursuant to 28 U.S.C. §1447(e), "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." At this stage, the "freely given" standard of Rule 15(a) does not apply, and the proposed amendment must be more closely scrutinized. *Short v. Ford Motor Co.*, 21 F.3d 1107, *5 (5th Cir. 1994) (unpublished) (citing *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). With the Court's determination that Gregory Fleniken - and thereby his legal representative - was a Louisiana domiciliary at the time of his death, the addition of non-diverse defendants by way of the Amended Complaint  triggers the application of 28 U.S.C. §1447(e) as that statute "trumps"

---

[10]*Whitworth v. TNT Bestway Transp. Inc.,* 914 F.Supp 1434, 1435 (E.D.Tex 1996); *Brown v. Entrust Administration Services,* 2011 WL 1230275, *2 (S.D. Tx. 2011) and cases cited therein.

Fed. R. Civ. P. 15(a).[11]

Since the pleading was filed without leave of court, the defendants did not have an opportunity to object, and by the Motion to Strike, the defendants call for striking the amended pleading altogether, or alternatively,  for striking  those allegations relating to claims against the Newtron defendants. [Rec. Doc. 10]   The failure to obtain leave of court renders the filing "improper and ineffective," but because the parties have fully briefed the *Hensgens* analysis in response to the Motion to Strike, "in the interest of judicial economy," this Court addresses the filing of the Amended Complaint as if it included a request for leave to amend for purposes of the motion to strike.[12]

Under *Hensgens,* the court applies a four-factor test for determining whether the addition of a non-diverse defendant requiring remand should be granted, or whether the amendment seeking to add the non-diverse defendant should be denied, allowing the federal court to retain jurisdiction.[13]   The four factors are (1) "the extent

---

[11]*Ascension Enterprises, Inc. v. Allied Signal, Inc.* 969 F.Supp. 359, 360 (M.D.La. 1997).  The Court notes §1447(e) would have been triggered either way since Mr. Bourque is alleged to be a domiciliary of Texas as was Mr. Fleniken. There is no reasonable explanation for not seeking leave of court to file the Amended Complaint.

[12]*Brown v. Entrust Administration Services, supra, at *2.*

[13] *Hensgens v. Deere & Co.,* 833 F2d at 1182. Although *Hensgens* pre-dates the 1988 enactment of §1447(e), the analysis still applies. *Templeton v. Nedlloyd Lines*, 901 F.2d 1273, 1275-76 (5th Cir. 1990) (per curiam); *Kopczynski v. Wal-Mart Stores Texas*

-18-

to which the purpose of the amendment is to defeat federal jurisdiction"; (2) "whether the plaintiff has been dilatory in asking for amendment"; (3) "whether plaintiff will be significantly injured if amendment is not allowed"; and (4) "any other factors bearing on the equities" in the case at hand. *Id.* The balance does not hinge on "a rigid distinction of whether the proposed added party is an indispensable or permissive party." *Id.* Further, "the addition of a nondiverse party must not be permitted without consideration of the original defendant's interest in the choice of forum." *Id.*

MCM does not particularly argue, nor does this Court find, that the second factor militates in favor of disallowing the amendment. The overarching theme of the defense position is that the plaintiff's claims against the Newtron defendants are futile, or that the plaintiffs have not stated a valid claim against the Newtron defendants, and therefore, only the first and third *Hensgens* factors are at issue.

Under the first *Hensgens* factor, some courts in this circuit consider whether the plaintiffs knew or should have known the identity and activities of the non-diverse defendant before removal.[14] Others look at whether the plaintiff has stated a

_____

*LP*, 2011 WL 902237 *2 FN14 (S.D.Tx. 2011).

[14]*Kopczynski v. Wal Mart,* 2011 WL 902237 at *3; *Schindler v. Charles Schwab & Co.*, Civ. A. 05-0082, 2005 WL 1155862, at *3 (E.D.La. 2005).

valid cause of action against the non-diverse defendant.[15]   Under the third *Hensgens* factor, MCM claims that the plaintiff's claims against the Newtron defendants are futile, since they fail to state a claim upon which relief can be granted, and thus the plaintiff will not be significantly injured if such claims are disallowed.  In *Wilson v. Bruks-Klockner, Inc.*, 602 F.3d 363, 368 (5th Cir. 2010), the court stated:

> As a plaintiff will not be "significantly injured" by the denial of a clearly meritless claim, it is within the district court's discretion to deny the amendment as futile if there is no reasonable basis to predict that the plaintiff will be able to recover against the non-diverse, non-indispensable party sought to be added as a defendant.

The *Wilson* court also recognized that, just as in the case of allegations of fraudulent joinder, in making its determination of whether a proposed amendment is a guise for forum manipulation, a district court has discretion to permit limited discovery into "discrete and undisputed facts" omitted from the complaint which might preclude recovery from the non-diverse defendant.[16]  While the exhibits produced by the Newtron defendants may be worthy of consideration, given their procedural posture in this case, this Court declines the invitation and instead, relies on an analysis of the

---

[15] *Tillman v. CSX Transportation Co. Inc.* 929 F.2d 1023, 1029 (5th Cir. 1991); *Kling Realty Co., Inc. v. Texaco*, 2007 WL 4553611 (W.D. La. 2007); *Kopczynski v. Wal Mart Texas LP* at *3 citing Holstein v. Daimler Chrysler Corp.*, 2007 WL 4611914, *2 (S.D. TX. 2007); *Brown v. Entrust Administration Services* at *3. See also Karr v. Brice Building Co.* 2009 WL 1458043 at *3  (E.D. La. 2009) and cases cited therein.

[16] *Wilson v. Bruks-Klockner, Inc.* 602 F.3d at 373 *citing Smallwood v. Illinois Central RR CO.* 385 F.3d 568, 573-74 (5th Cir. 2004).

plaintiff's claims against the Newtron defendants under a 12(b)(6) standard.

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[17] According to the Supreme Court:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . .The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' . . .
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of

---

[17]  *In re Katrina Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007), *quoting Bell Atlantic Corp. V. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007).

misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." . .

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-1950 (2009) citing *Twombly* (citations omitted).

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled.  Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S.Ct. at 1949.

The plaintiff asserts that she did not know and could not have known of the Newtron defendants at the time of original suit filing.  MCM does not seriously challenge this position, arguing instead that the viability of the amended claims against the Newtron defendants are "tortured, at best" since the individual defendant employees (Mueller, et. al.) were not in the course and scope of their employment when the incident occurred.  Citing the Louisiana Supreme Court case of *Roberts v. Benoit*, 605 So.2d 1032 (La. 1991), MCM argues that, like the situation in *Roberts*,

based on the allegations in the Complaint, the incident occurred after work hours; the place was removed from any worksite; the incident was unrelated to work activities and had no connection to the employer's business.  *Id.,* at 1041.  On these factual allegations,  the conduct of the individual defendants had no connection to their employment so as to be regarded as a risk of harm fairly attributable to Newtron's business.  This Court agrees.

The plaintiff responds that the applicable law is that of Texas even though all of the allegations of the original Complaint allege violations of Louisiana law.[18]  Such an argument, even if accepted  as true, does not avail the plaintiff a valid cause of action against the Newtron defendants for the actions of Meuller, et al on the night of the incident.  Under Texas law:

> The general rule is that an employer is liable for its employee's tort only when the tortious act falls within the scope of the employee's general authority in furtherance of the employer's business, and for the accomplishment of  the object for which the employee was hired . . . [F]or an employee's act to be within the scope of employment, 'the conduct must be of the same general nature as that authorized or incidental to the conduct authorized' . . . In other words, if an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation.

---

[18]Since the incident at issue occurred in Texas, and since Louisiana conflicts of law principles will apply to this diversity action, the plaintiff contends the provisions of La. C.C. art. 3543 dictate that issues pertaining to standards of conduct and safety are governed by the law of the state in which the injury-causing conducted occurred.

*Minyard Food Stores v. Goodman*, 80 S.W.3d 573, 577 (Tex.2002) (citations omitted).

There is no set of facts that can be derived from the allegations against Mueller et al on the night of the incident that could support a claim that the Newtron defendants have vicarious or *respondeat superior* liability for the wrongful death or survival actions whether brought under Louisiana or Texas law.  The allegations do not in any way lead to the inference that the behavior of the men was in furtherance of Newtron's business even assuming they were actually employed.  Plaintiff asserts, however, that even if it should be found that Mueller, et. al. were not acting in the course/scope of their employment at the time of the incident, "there are several other viable claims asserted against Newtron that make it an indispensable party." [Rec. Doc. 12, p. 5]  Specifically,  plaintiff points to that aspect of Texas law which recognizes a cause of action for negligent hiring, when an employer's failure to investigate, screen, or supervise its hirees proximately caused the injuries alleged by the plaintiff.   In such a case, course and scope is not an essential element of the claim. Both parties cite *Dieter v. Baker Service Tools*, 739 S.W.2d 405, 408 (Tx. App. Corpus Christi 1987) in which the court stated:

> While the issue has not been directly addressed by a Texas court, we hold that liability for negligent hiring and supervision is not dependent upon a finding that the employee was acting in the course and scope of his employment when the tortious act occurred. *See generally*

*Salinas v. Fort Worth Cab & Baggage Co.*, 725 S.W.2d 701 (Tex.1987); *see e.g. Plains Resources, Inc. v. Gable*, 235 Kan. 580, 682 P.2d 653 (1984); *Welsh Manufacturing v. Pinkerton's, Inc.*, 474 A.2d 436 (R.I.1984); *Gregor v. Kleiser*, 111 Ill.App.3d 333, 67 Ill.Dec. 38, 443 N.E.2d 1162 (1982). If course and scope was a required element of a negligent hiring and supervision claim, negligent hiring and supervision as a unique cause of action would be rendered superfluous by the *respondeat superior* doctrine.

.     .     .

In the Texas cases which we have examined discussing the tort of negligent hiring, there has been no question as to whether there was some connection between the plaintiff's injury and the fact of employment. . . . However, several cases from other jurisdictions have confirmed our belief that in order to impose liability upon an employer under the doctrine of negligent hiring, there must be evidence that the plaintiff's injuries were brought about by reason of the employment of the incompetent servant and be, in some manner, job-related. Stated another way, the negligence in hiring the employee must be the proximate cause of the injuries to the plaintiff. . . . 'Were such a connection not required, an employer would essentially be an insurer of the safety of every person who happens to come into contact with his employee simply because of his status as an employee.'[19]

*Id.* (citations omitted).

Under Texas law, the two elements of proximate cause are cause in fact and foreseeability.[20] The two elements cannot be established by conjecture, guess or

---

[19]*See also Doe v. Boys Club of Greater Dallas*, 868 S.W.2d 942, 950 (Tx. App. Amarillo 1994) *aff'd* 907 S.W.2d 472 (Tx. 1995), (the plaintiff's harm must be a result of the employment of the incompetent servant), *Donohue v. Melrose Hotel,* 1997 WL 148012, *10 (N.D. Tex 1997); *Capece v. Navisite, Inc.* 2002 WL 31769032, *4 (Tx. App. Austin 2002).

[20]*Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tx. 1995).

speculation.[21]  Cause in fact is not shown if the defendant's negligence did no more

than furnish a condition which made the injury possible, rather, the negligent act or

omission must be a substantial factor in bringing about the injury. [22]  Foreseeability

'requires that a person of ordinary intelligence should have anticipated the danger

created by the negligent act or omission" and "involves a practical inquiry based on

'common experience applied to human conduct.'"[23]

Citing an exhibit attached to the Amended Complaint, plaintiff argues that

Mueller would not have been hired by Newtron if a background check had been

performed because Mueller had a criminal history of "operating under the influence,

domestic violation, disorderly conduct and physical force."[24] [Rec. Doc. 7, p. 5-6, ¶¶

22, 23]  Plaintiff further alleges in the Amended Complaint that Newton was under

a duty to conduct pre-employment background checks on out-of-state workers and

that "Newtron's out-of-state employees had a unique opportunity to commit a tort

against a third party in the performance of their duties." [Id., p. 15, ¶ 68]  The

---

[21]*Id.*

[22]*Id.*

[23] *Id.*, at 478.

[24]The exhibit lists a number of legal proceedings but does not actually indicate the actual charges, what the proceedings entailed, or the outcome beyond the fact all were closed.  Thus, it is not at all clear that Newtron would not have hired Mr. Mueller had it known about that which is contained on the exhibit.

allegations then state that due to Mueller's background, it was reasonably foreseeable that his actions would have occurred on the night of September 10 and  "but for Newtron hiring Mueller, Mr Fleniken would be alive today." [Id. p.15-16, ¶¶ 72-78] These conclusory statements are disregarded. Assuming Newtron had such a duty, and assuming further they breached that duty, the Court finds that there are no factual allegations that support a finding of proximate cause.

What is clear from the factual allegations is Mueller was not in the "performance of his duties" at the time of the incident.  The facts alleged indicate that Pasano, who was not staying in the room with Mueller and Steinmetz, but was a guest,  retrieved a weapon from Mueller's car and brought it to the room.  Mueller loaded it and "sometime thereafter" it went off. It was nothing short of profound coincidence that the bullet managed to travel through two walls, an entertainment console, and fatally strike Mr. Fleniken in the manner alleged because of where he happened to be lying in bed watching television.  It is also clear that the ultimately fatal injuries to Mr. Fleniken were not in any way related to the job of electrician Mueller was allegedly hired to perform.  It is pure speculation and conjecture that the alleged failure to look into Mueller's background, which *might* have prevented him from being hired, would have in fact kept Pasano from retrieving the gun, the gun accidentally going off and the bullet traveling the route that it did leading to the tragic

death of Mr. Fleniken. The Court finds that there is no viable cause of action for negligent hiring or retention against the Newtron defendants under Texas law.

In the seventh cause of action, the plaintiff alleges that the three individuals in the room at the time of the incident, and their foreman, Mr. Bourque, "conspired to commit fraud by misrepresenting the truth and/or suppressing the truth from the Beaumont Police Department during its investigation" by failing to report that Mr. Fleniken had been shot by Mueller until the summer of 2011. [Rec. Doc. 7, p. 17, ¶¶ 80, 81] More specifically, Muller and Steinmetz, who were interviewed by the police the day after the incident denied any knowledge of it. [Id., p. 7, ¶ 34]  Mueller told Bourque sometime later that he saw police taking the body away and did not tell the police the truth. [Id., p. 8, ¶ 39] Bourque did not volunteer this information until he was questioned by police nine months later. [Id.] It is not clear that Pasano did anything other than failing to report the incident. As a result of the false and suppressed information, Mrs. Fleniken endured severe emotional distress. [Id.] According to the Fifth Circuit:

> Civil conspiracy under Texas law is 'a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.' *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex.1968) (internal quotation marks and citations omitted). 'The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt

acts; and (5) damages as the proximate result.' *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983).

In Texas, 'civil conspiracy requires specific intent.' *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex.1995). Proof that a defendant 'intend[ed] to engage in the conduct that resulted in the injury' is insufficient. *Id.* Instead, '[f]or a civil conspiracy to arise, the parties must be aware of the harm or wrongful conduct at the inception of the combination or agreement.' *Id*. 'One without knowledge of the object and purpose of a conspiracy cannot be a co-conspirator; he cannot agree, either expressly or tacitly, to the commission of a wrong which he knows not of.' *Schlumberger*, 435 S.W.2d at 856. 'And, of course, one without knowledge of a conspiratorial plan or scheme to injure another by the commission of a particular wrong cannot share the intent to injure such other.' *Id*. at 857.

*Peavey v. WFAA-TV, Inc.* 221 F.3d 158, 172-173 (5th Cir. 2000).

In Texas it is a crime for a person, with intent to deceive, to knowingly make a false statement to a police officer that is material to a criminal investigation. Texas Penal Code §37.08.  Therefore, the factual allegations in Article 37 of the Amended Complaint suggest that Mueller and Steinmetz committed a crime by making such a statement.  There are sufficient allegations to infer that the object of their "overt act" was to avoid prosecution. The plaintiff has pled damages to a third person, Ms. Fleniken, as a result of their actions.  The plaintiff has also pled Bourque knew about, but chose not to expose, the falsehood, which can be inferred to be an intentional act.

Assuming without deciding that plaintiff has sufficiently pled a civil conspiracy and fraud involving any or all of the individuals, including Bourque, the

issue germane to the Court's jurisdiction is whether Newtron, the non-diverse defendant, has *respondeat superior* liability for the actions of those individuals. According to the Fifth Circuit, under Texas law, an agent's "serious criminal activity" is "almost never" found to be within the scope of the authority granted by a principal unless the acts of the employee are "foreseeable considering the employee's duties."[25]

There are no factual allegations as to what the duties of Steinmetz and/or Mueller were beyond a generic description of their jobs as electricians. Therefore, the Amended Complaint does not set forth a cause of action for *respondeat superior* liability against Newtron for the actions of Steinmetz or Mueller. Even more lacking are any factual allegations that would suggest what Pasano did for Newtron, whether he was a part of the alleged conspiracy, whether he was questioned by police, or whether he ever  knew that Mr. Fleniken had been killed. Therefore, the Complaint does not state a cause of action for *respondeat superior* liability against Newtron for the actions of Pasano.

With regard to Bourque, it is alleged he was the foreman of "the Newtron electrical crew." There is nothing in the Complaint, as amended, which alleges as a factual matter what duties Mr. Bourque had as a foreman, or what authority he may

---

[25]*Ross v. Marshall*, 426 F.3d 745, 764-765 (5th Cir. 2005) citing *Williams v. United States,* 71 F.3d 502, 506 FN 10 (5th Cir 1995)*.*

have had, if any, from his employer.  This Court is unable to infer from these allegations that Newtron gave authority to its employees to falsify information or otherwise hide the commission of felonies from law enforcement authorities. Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."[26]  Therefore, the Amended Complaint fails to state a claim against Newtron in the seventh cause of action.

The Court finds that under the first *Hensgens* factor, the plaintiff's actions were taken in a effort to defeat federal jurisdiction because the allegations fail to state a valid claim against the non-diverse defendants. Under the third *Hensgens* factor, the Court finds the plaintiff will not be injured by disallowing the amendment, at this time, as the existing allegations against the non-diverse defendants illustrate that the claims are futile.

The fourth *Hensgens* factor includes consideration of the removing defendant's right to litigate in the federal forum, not an insignificant consideration, per *Hensgens*. The Court must  balance the original defendant's interest in maintaining a federal forum with the competing interest in avoiding potentially parallel litigation. Inasmuch as all the remaining defendants are diverse, and the Court finds the claims against the

---

[26]*Ashcroft v. Iqbal*, 129 S.Ct. 1949-1950.

non-diverse defendants are, as alleged thus far, futile, the defendant's right to a federal forum outweighs the potential for piecemeal litigation.

***Conclusion and Recommendations***

The unfortunate circumstance of Greg Fleniken's working arrangement led him to be in the wrong place at the wrong time on the night of his tragic death. That arrangement does not and did not change his domicile from the home of his family in Louisiana. Greg Fleniken was domiciled in Louisiana, and therefore, his widow assumes his citizenship for purposes of jurisdiction. Since MCM is a citizen of Texas, the parties were diverse at the time of removal. The amendment seeking to add the Newtron defendants would destroy diversity, and under the analysis required by 28 U.S.C. 1447(e), it cannot be allowed in full at this time.

Therefore, considering the foregoing,

**IT IS RECOMMENDED** the Motion to Strike [Rec. Doc. 10] be GRANTED IN PART AND DENIED IN PART. Specifically, the Amended Complaint should be allowed to be filed insofar as it sets forth allegations against the diverse defendants, Pasano, Steinmetz, Mueller and Bourque, and to that extent the motion should be

DENIED. The Motion to Strike the plaintiff's fourth, fifth, sixth and seventh causes of action against Newtron Inc. and Newtron Group, LLC. should be GRANTED and the allegations, as they pertain to these entities, should be stricken.

**IT IS FURTHER RECOMMENDED** the plaintiff's Motion to Remand [Rec. Doc. 21] be DENIED AS MOOT.

**IT IS FURTHER RECOMMENDED** the Motion to Dismiss, or Alternatively, For Summary Judgment [Rec. Doc. 51], filed by Newtron Inc. and Newtron Group, LLC. be DENIED AS MOOT.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds

of plan error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415

(5th Cir. 1996).

      Signed at Lafayette, Louisiana, on April 2nd, 2012.


                            _____

                                   PATRICK J. HANNA

                                 U.S. MAGISTRATE JUDGE